Agostini, John A., J.
A. Background 
In this insurance coverage action brought by the Roman Catholic Bishop of Springfield (the Diocese), the defendant insurers, North Star Reinsurance Corporation (North Star), issued a subpoena requesting documents which are in the custody of the Hampden County District Attorney (the District Attorney). In response, the District Attorney has ñled a motion for a protective order under Mass.R.Civ.P. 26(c),[2] arguing that the request is overly broad and burdensome and that the requested documents: (1) are exempt from public access and disclosure as investigatory records under G.L.c. 4, §7, Twenty-sixth (f); (2) contain private, personal information protected under G.L.c. 4, §7, Twenty-sixth (c); (3) contain the District Attorney’s deliberative processes and sources; (4) contain privileged interagency memoranda; and (5) contain CORI information which, pursuant to G.L.c. 6, §§167-78, cannot be disclosed. Following a hearing on the District Attorney’s motion, North Star narrowed its request to the following documents:
All statements from witnesses, or documents relating to statements from witnesses, concerning, referencing, or relating to any closed investigation of sexual abuse against Richard Lavigne, from 1950 to 1987.
B. Discussion
Protective orders are governed by Mass.R.Civ.P. 26(c), which provides that
Upon motion by . . . the person from whom discovery is sought, and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms or conditions . . . ; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters . . .
Because the District Attorney’s memorandum, privilege log, and arguments at the motion hearing were addressed to a much larger request for documents by North Star, many of his arguments are no longer pertinent. In any event, the Court discusses each argument in turn.
1. Investigatory Records
The District Attorney asserts that the subpoena seeks investigatory materials exempt from disclosure under G.L.c. 4, §7, Twenty-sixth (f), which excludes from the definition of public records
investigatory materials necessarily compiled out of the public view by law enforcement or other investigatory officials, the disclosure of which materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest.
Among the public policy concerns underlying this exemption are “the prevention of disclosure of confidential investigative techniques, procedures, or sources of information, [and] the encouragement of individual citizens to come forward and speak freely with police concerning matters under investigation.” District Attorney for the Norfolk District v. Flatley, 419 Mass. 507, 512 (1995), quoting Bougas v. Chief of Police of Lexington, 371 Mass. 59, 62 (1976). Whether these documents are entitled to this exemption is determined on a case-by-case basis, and the custodian of the records, here the District Attorney, bears the burden of proving with specificity the applicability of the exemption. Rafuse v. Stryker, 61 Mass.App.Ct. 595, 561 (2004).
*534 As an initial matter, the District Attorney misses the mark by relying on this and other exemptions to the public records law, because the exemptions delineate what must not be made available for public inspection, but they do not govern what is discoverable. See Sullivan v. Chief Justice for Administration and Management of the Trial Court 448 Mass. 15, 33 n.11 (2006) (public records law does not restrict the breadth of discovery); Matter of Subpoena Duces Tecum, 445 Mass. 685, 691 (2006) (same).
The District Attorney also has failed to prove with specificity the applicability of the investigatory materials exemption. His argument hinges on North Star’s now withdrawn request for information regarding the Croteau murder. North Star only seeks, at this point, statements and documents from or relating to witnesses regarding closed investigations of sexual abuse by Richard Lavigne.
Nor has the District Attorney argued how documents relating to closed investigations of sexual abuse by Lavigne contain confidential materials or investigative techniques, such that their disclosure would prejudice the possibility of effective law enforcement. See In the Matter of a Subpoena Duces Tecum, 445 Mass. at 690 (denying district attorney’s unsupported motion to quash where assistant district attorney “could provide no insight as to the confidential nature of the [materials sought]” and court found no evidence in record that techniques employed were so confidential that disclosure of the materials would prejudice the possibility of effective law enforcement). The District Attorney has not argued specifically how turning over to North Star the requested documents would discourage other witnesses from coming forward, if the identity of the victims of sexual abuse are concealed through redactions. See The Republican Company v. Appeals Court, 442 Mass. 218, 226-27 (2004). I find that such redactions would foreclose an invasion of the privacy of the victims, and that, therefore, disclosure under these conditions would not “prejudice the possibility of effective law enforcement.” See G.L.c. 4, §7, Twenty-sixth (f).
2. Privacy Concerns
The District Attorney also argues that the requested documents are immune from discovery because they “may contain private information” and that reports of sexual assault and rape cannot be disclosed in discovery in civil litigation. This litigation by its nature arises out of highly personal information which, therefore, North Star and the other defendant insurers have a right to review when defending against the Diocese’s insurance coverage claims. To the extent that the District Attorney relies on the privacy exemption to the public records law, which does not circumscribe discovery, it is unavailing. See Sullivan v. Chief Justice for Administration and Management of the Trial Court, 448 Mass. at 33 n.11. Likewise, insofar as the materials include statements by victims of sexual abuse or reports or accounts of such sexual abuse which are protected from public inspection by G.L.c. 41, §97D,[3] that statute does not bar disclosure of these materials in a civil action under a court order enforcing a subpoena upon a non-parly. See Doe v. Lyons, 6 Mass. L. Rptr. 274, 276 (Mass.Super.Ct. Dec. 23, 1996); Doe v. Bright Horizons Children’s Centers, Inc., 8 Mass. L. Rptr. 616, 618 (Mass.Super.Ct. July 2, 1998) (Bras-sard, J.) (a statutory requirement that the report be confidential does not mean that any disclosure whatsoever is prohibited).
The privacy concerns of the victims of sexual abuse, however, are significant. Therefore, as discussed above, the District Attorney will redact the discoverable documents to conceal the names, addresses, social security numbers, and familial relationships of the victims of sexual abuse.
The District Attorney also asserts that “similar privacy considerations concern the release of names of potential suspects which may be contained in the information that the defendant seeks.” In the context of the sexual abuse scandal in the Springfield Diocese, the public statements by attorneys involved in settlements with the Diocese, and wide media coverage on the subject, the names of most, if not all, of the suspects have already been disclosed to the public. Some of the well-known suspects are deceased. The District Attorney does not argue that any of the suspects’ names have not already been publicized. In these circumstances, the District Attorney has not shown the existence of a risk of an unwarranted invasion of privacy of those suspects. See Globe Newspaper Co. v. Police Comm’r of Boston, 419 Mass. 852, 867 (1995) (“[t]o the extent that the report and the response have already identified some of these suspects, this information is no longer private, and thus not entitled to protection under [investigatory exemption and privacy exemption]”).
3. Deliberative Process Privilege
The District Attorney next asserts that North Star is not entitled to documents which “disclose matters related to the internal administration of the District Attorney’s Office.” For this proposition, he claims that there is a “deliberative process privilege” akin to the investigatoiy materials exemption, and that it pertains to materials revealing his mental processes. His argument rests on one inapposite Massachusetts decision[4] and a string of citations to cases from other jurisdictions. Countering his claim of privilege, the Supreme Judicial Court has clarified that, “in Massachusetts, neither the courts nor the Legislature has adopted a ‘deliberative process’ privilege as the district attorney now suggests.” District Attorney for the Norfolk District v. Flatley, 419 Mass. at 510 (rejecting district attorney’s contention that fifteen pages of handwritten notes assembled after prosecutor’s interview with victim should be protected from public access as pro-secutorial deliberative material).
*535 4.Interagency Memoranda Privilege
The District Attorney maintains that, “To the extent that the requested documents contain inter-agency or intra-agency memoranda, they are privileged” under G.L.c. 4, §7(d), an exemption to the public records law. See General Electric Co. v. Dept. of Environmental Protection, 429 Mass. 798, 806-07 (1999). This exemption protects from mandatory public disclosure “inter-agency or intra-agency memoranda or letters relating to policy positions being developed by the agency ...” Babets v. Secretary of Executive Office of Human Services, 403 Mass. 230, 237 n.8 (1988) (emphasis in original). Once the deliberative process has been completed, the documents generated by the deliberative process become publicly available. Id. This exemption is designed to “foster independent discussions between those responsible for a governmental decision in order to secure the quality of the decision.” General Electric Co. v. Dept. of Environmental Protection, 429 Mass. at 807.
There are two problems with the District Attorney’s invocation of G.L.c. 4, §7(d). First, North Star is not seeking these documents to make them available for public inspection, but rather as part of discovery in this civil suit. It may be that some of the inter-agency and intra-agency materials are responsive to North Star’s request and highly relevant to the issue of what and when the Diocese knew about sexual abuse perpetrated by its religious and/or deacons. In these circumstances, the District Attorney has not shown that the exemption applies to bar discovery (as opposed to public inspection) of these materials.
Furthermore, the District Attorney does not argue, nor does the record support the conclusion, that the deliberative process is ongoing with respect to closed cases of sexual abuse by Lavigne. See Babets v. Secretary of Human Services, 403 Mass. at 237 n.8. North Star’s reduced request to only statements concerning closed cases defeats the District Attorney’s withholding of documents in reliance upon G.L.c. 4, §7(d).
5.CORI Materials
Next the District Attorney asserts that “Portions of the requested records may contain criminal offender record information (CORI), which, pursuant to G.L.c. 6, §§167-178, cannot be disseminated absent a court order.” The District Attorney’s privilege log lists seven documents which it claims are protected under CORI.[5]
General Laws c. 6, §167, defines in relevant part criminal offender record information (CORI materials) as
records and data... compiled by a criminal justice agency which concern an identifiable individual and relate to the nature or disposition of a criminal charge, an arrest, a pre-trial proceeding, other judicial proceedings, sentencing, incarceration, rehabilitation, or release. Such information shall be restricted to that recorded as the result of the initiation of criminal proceedings or any consequent proceedings related thereto. Criminal offender record information shall not include evaluative information, statistical and analytical reports and files in which the individuals are not directly or indirectly identifiable, or intelligence information.
The CORI statute is aimed at establishing data systems for the administration of criminal justice agencies, and to “resolve questions of individual privacy and system security in connection with the operation of those systems.” New Bedford Standard-Times Publishing Co. v. Clerk of the Third Dist. Court of Bristol, 377 Mass. 404, 413 (1979). The statute “may evidence a proper concern with, and protection of, the individual’s interest in privacy.” Id. (internal quotation and citation omitted).
It is far from clear that the seven items designated in the District Attorney’s log as CORI are responsive to the narrowed request for documents relating to closed cases of sexual abuse by Lavigne, or that the CORI nondissemination restrictions have not otherwise terminated with respect to some individuals. Much of the materials in the log have already been published, except for the names of the victims of sexual abuse, and are court records, and some of the suspects are deceased.[6]
Nonetheless, North Star concedes the applicability of the CORI restrictions in G.L.c. 6, §§167 etseq.,[7]and states that it only seeks documents which can be disclosed as intelligence information defined under G.L.c. 6, §167. Furthermore, North Star does not object to the redaction of any information which may be protected by CORI. Therefore, the District Attorney shall produce materials which are responsive to North Star’s request identified as CORI, but redact them to conceal the identities of any individuals whose privacy is protected by CORI (i.e., the individuals are alive and their CORI has not otherwise been made available to the public).
6.Miscellaneous
The significant reduction in the scope of North Star’s request — relating now only to one perpetrator of sexual abuse and only closed cases — defeats the District Attorney’s general argument that the request is overbroad, unduly burdensome, and irrelevant to this litigation. Many of the documents listed in the District Attorney’s privilege log are not responsive to North Star’s request, as they address solely the Croteau murder or alleged perpetrators with no connection to Lavigne. Moreover, some of the witness statements which are responsive to North Star’s request are within the group of materials which were generated in connection to the 1993 search warrant for a sample of Lavigne’s blood, and are available for public inspection at the Hampden Superior Court Clerk’s Office. There *536 is no need for the District Attorney to produce them to North Star.
The District Attorney has not plausibly argued, much less shown, how documents which are in his custody and are responsive to this request are irrelevant to this action or on other grounds should not be produced. The fact that the District Attorney possesses relevant documents from the Diocese (such as, presumably, diocesan sexual abuse intake forms), does not excuse the District Attorney from complying with this reasonable, relevant, and limited discovery request from North Star.
ORDER
For all the foregoing reasons/it is hereby ORDERED that the Hampden County District Attorney’s Motion for Protective Order and Motion to Quash is ALLOWED with respect to the following:
(1) the identifying information (names, addresses, social security numbers, and family relationships) of victims of sexual abuse; and
(2) the materials identified in the District Attorney’s Privilege Log as Addenda to Daly Affidavit (filed in support of the September 1993 seaich warrant application).
With respect to the remaining documents in the District Attorney’s custody which are responsive to North Star’s request, the Motion for Protective Order and Motion to Quash is DENIED.
It is further ORDERED that the Hampden County District Attorney shall, within 15 days of entry of this Order, prepare a redacted version of the documents which are responsive to North Star’s request for documents, so as to conceal:
(1) information which would permit the identification of the victims of sexual abuse; and
(2) the identity of individuals whose CORI is protected, as instructed in this Memorandum.
It is further ORDERED that the Hampden County-District Attorney shall, within 15 days, provide a copy of the redacted materials to North Star.

Although the District Attorney captioned his filing as a Motion for Protective Order and Motion to Quash, it is brought under Mass.R.Civ.P. 26(c) and is treated as a single motion.

General Laws c. 41, §97D, provides in pertinent part,
All reports of rape and sexual assault or attempts to commit such offenses and all conversations between police officers and victims of such offenses shall not be public reports and shall be maintained by the police departments in a manner which will assure their confidentiality.
Similarly, G.L.c, 265, §24C, mandates that the portion of records of, inter alia, police or prosecutors containing the name of a victim in an arrest, investigation or complaint for rape or assault with intent to rape shall be withheld from public inspection and shall not constitute a public record.

The Distnct Attorney relies on Commonwealth v. Coyne, 372 Mass. 599, 600 (1977), in which the Supreme Judicial Court did not recognize a deliberative process privilege in our jurisdiction, but concluded that the lower court judge had not abused his discretion in refusing to interfere with the prosecutor’s wide discretion in classifying defendant as a “major violator.”

hese are numbered 65, 67, 83, 85, 86, 87, and 90.

CORI dissemination restrictions terminate upon death of the individual whose privacy is at stake. See 803 Code Mass. Regs. §2.04(11).

See G.L.c. 6, §§167, 171, 172 and 178A.